UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RRK FOODS INC.,                    )
                                   )
            Plaintiff,             )
                                   )        CIVIL ACTION NO.
VS.                                )
                                   )        3:21-CV-2943-G
SREE NIDHI CORP.,                  )
                                   )
            Defendant.             )
                                   )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Sree Nidhi Corp. ("SNC") to dismiss this case for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Defendant's Motion to Dismiss Under Rule 12(b)(6) and Brief in Support ("Motion") (docket entry 11).  For the reasons stated below, SNC's motion to dismiss is **GRANTED** in part and **DENIED** in part.

### I.  BACKGROUND

This case concerns SNC's alleged trademark infringement under federal and state law, unjust enrichment as a result of trademark infringement, and misappropriation of trade secrets under federal and state law.  *See generally* Original

Complaint ("Complaint") (docket entry 1).  The parties in this case consist of the plaintiff, RRK Foods Inc. ("RRK"), a Texas corporation with its principal place of business in Coppell, Texas, and SNC, a Delaware corporation with its principal place of business in Charlotte, North Carolina.  *Id*. ¶¶ 5-6.  RRK contends that it has trademark rights in the mark TELUGU FOODS SOUTH INDIA SPECIALS (& Design)® (shown below), which is the subject of Registration No. 5,936,039, the Registration Certificate for which is attached as Exhibit A to the Complaint:



Exhibit A to Complaint.

The claim of trademark infringement concerns SNC's use of the mark IN LOVE WITH TELUGU (& Heart Design) for snack food products.  Motion at 1-2.



Complaint ¶ 26.

- 2 -

RRK alleges that SNC's mark is likely to cause confusion with RRK's use of the mark TELUGU FOODS SOUTH INDIA SPECIALS (& Design)® for similar products.  Motion at 2.  SNC moves to dismiss RRK's claims, arguing that "the only common term in the two marks is TELUGU, which is a generic term denoting a connection with the states of Andhra Pradesh and Telangana in India" and that "[t]he right to the exclusive use of TELUGU is disclaimed in the Trademark Registration relied on by the Plaintiff."  *Id*. (internal citation omitted).  Further, SNC argues that "[t]he Unjust Enrichment claim is premised on Defendant's infringement of Plaintiff's trademark and necessarily fails if the trademark infringement claims fail."  *Id*.  Finally, SNC contends that "[a]s to the Trade Secrets claim, Plaintiff states no facts from which a finder of fact could determine that the information allegedly taken and used by Defendant is entitled to protection as a trade secret."  *Id*.

RRK "has used its TELUGU FOODS SOUTH INDIA SPECIALS (& Design)® mark in connection with its goods and business since it started to manufacture its branded food products in India in 2004 and has consistently used the same in commerce in the United States since as early as January 11, 2019.  Plaintiff is the owner and registrant of U.S. Trademark Registration Number 5,936,039 for its TELUGU FOODS SOUTH INDIA SPECIALS (& Design)® mark (Registration Date: December 17, 2019)[.]"  Complaint ¶ 7.  RRK does business with and through related companies Frumar Foods and NSP International ("NSP") of India.  *Id*. ¶ 8.

Frumar Foods is a manufacturer of food products bearing RRK's registered mark and is a known manufacturer of South Asian snacks and food products that are exported and imported around the world.  *Id*. ¶ 9.  RRK contends that "[i]n 2016, Frumar Foods and NSP enlisted Defendant to import and distribute some of Plaintiff's products bearing the Registered Mark in the southeast United States.  The parties successfully conducted business together from 2016 until on or about the end of 2020 and the first quarter of 2021, which resulted in approximately USD $1.8 million in sales."  *Id*. ¶ 11.  RRK's position is that "[a]s an importer and distributor, Defendant was entrusted with valuable, proprietary, trade secret information about Plaintiff's products including secret and proprietary recipes, pricing, customers, and confidential information unknown to Plaintiff's competitors concerning the South Asian food market."  *Id*. ¶ 12.

RRK alleges that SNC "has been using the entrusted and proprietary information to create its own food products and eventually unfairly compete with Plaintiff's products."  *Id*.  Further, RRK asserts that SNC "has wrongfully solicited at least three (3) of Frumar Foods' employees, promising to compensate them two (2) times what they were being paid, in an attempt to steal trade secret information, which included Plaintiff's and Frumar Foods' products including but not limited to secret and proprietary recipes[]" and allegedly "was successful and able to steal several of Plaintiff's secret and proprietary recipes and use them in their new brand of

- 4 -

unfairly competing food products." *Id.* ¶¶ 13-14.  RRK also contends that SNC has wrongfully solicited several of RRK's vendors to RRK's detriment and that SNC "who until recently [has] been strictly an importer and distributor of various food products and never a manufacturer of any goods, secretly made plans to set up manufacturing facilities in India to unfairly compete with Plaintiff and steal its business from an already established customer base that had been purchasing Plaintiff's products for years in the United States." *Id.* ¶¶ 15-16.

Additionally, RRK contends that SNC spread false claims about RRK's food products, such as claims that there were issues with food product quality and production.  *Id.* ¶ 17.  The business relationship between RRK and SNC was terminated in or around late 2020 or early 2021 when RRK alleges "Defendant's scheme was uncovered by Plaintiff and Frumar Foods[.]"  *Id.* ¶ 18.  RRK asserts that SNC purposely delivered expired, or nearly expired, quantities of RRK's food products by intentionally delaying their distribution until they were expiring in order to "harm and diminish Plaintiff's brand, while promoting Defendant's own unfairly competing goods to established customers in the trade."  *Id.* ¶¶ 19, 21.

At the heart of this controversy is RRK's contention that "[n]otwithstanding its intimate knowledge of Plaintiff, Frumar Foods, and their proprietary products bearing the Registered Mark, SNC filed at least three (3) 'Intent to Use' trademark applications with the [United States Patent and Trademark Office] for marks that are

- 5 -

confusingly similar to the Registered Mark and in the same International Classes as the Registered Mark (IC 29 and IC 30).  This was part of Defendant's willful scheme to attempt to steal business from Plaintiff and Frumar Foods, confuse Plaintiff's established customers, and dilute Plaintiff's goodwill in its Registered Mark." *Id*. ¶ 22.

> The three (3) "Intent to Use," trademark applications are as follows:
>
> a.  HA SNACKS IN LOVE WITH TELUGU (& Design) (filed on: January 02, 2021, Ser. No. 90491181);
>
> b.  MAA VELUGU TRADITIONAL TELUGU SNACKS (& Design) (filed on:September 03, 2021, Ser. No. 97010166); and
>
> c.  MAA VELUGU TRADITIONAL TELUGU SNACKS (standard character) (filed on:  September 03, 2021, Ser. No. 97010174).
>
> (See Exhibit B, attached hereto, and hereafter referred to together as the "Confusing Marks").  The Confusing Marks are likely to cause confusion with Plaintiff's Registered Mark because TELUGU is a dominant feature of both the Confusing Marks and Plaintiff's Registered Mark.  Moreover, two of the Confusing Marks use VELUGU as a dominant feature, which itself is confusingly similar to TELUGU.

*Id*. ¶ 23.

RRK contends that, because SNC was a prior importer and distributor for RRK, SNC knew that RRK sold snacks and food products under its registered mark, TELUGU FOODS SOUTH INDIA SPECIALS (& Design)®, and that it intentionally confused and diverted RRK's known American customers -- taking

advantage of RRK's goodwill and reputation.  *Id*. ¶ 25.  RRK also alleges that SNC

plotted to confuse consumers "by purposely using:"

> (a)  the mark "TELUGU" in all of its (three (3))
> applications;
>
> (b)  identical colors - red and white - and similar design,
> font and style of the mark "TELUGU":



> and
>
> (c) the term "VELUGU" that is confusingly similar as to
> appearance and sound to "TELUGU" on its remaining two
> (2) applications.

*Id*. ¶ 26.

According to RRK, customers and stores that have previously purchased RRK's

products have now replaced those with SNC's products.  *Id*. ¶ 27.  RRK argues that

SNC "has attempted to displace Plaintiff's proprietary goods, and unfairly and

wrongfully created a new market to replace and/or undercut Plaintiff and other

distributors of Plaintiff's goods bearing the Registered Mark."  *Id*. ¶ 28.  Count one of

the Complaint alleges claims of unfair competition, false endorsement, false

association, and false designation of origin under section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  *Id*. ¶¶ 30-36.  Count two alleges trademark infringement under section 21(a) of the Lanham Act, 15 U.S.C. § 1114.  *Id*. ¶¶ 37-50. Count three alleges unfair competition and passing off under Texas common law.  *Id*. ¶¶ 51-53.  Count four alleges trademark infringement under Texas common law.  *Id*. ¶¶ 54-56.  Count five alleges unjust enrichment.  *Id*. ¶¶ 57-59.  Count six alleges misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*.  *Id*. ¶¶ 60-64.  Finally, count seven alleges misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. § 134A.003, *et. seq*.  *Id*. ¶¶ 65-69.

SNC moves to dismiss RRK's claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  *See generally* Motion.

## II.  ANALYSIS

### A.  Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570, *cert. denied*, 552 U.S. 1182 (2008)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must

"plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (quoting Federal Rule of Civil Procedure 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendants "across the line from conceivable to plausible." See *id*. at 679.

## B. Application

### 1. *Unfair Competition, Trademark Infringement, and Unjust Enrichment (Counts I, II, III, IV, V)*

Counts one through five hinge on the same critical inquiry: whether SNC's mark is likely to cause confusion with RRK's mark. Count one alleges claims of unfair competition, false endorsement, false association, and false designation of origin under section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), which provides in relevant part:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or

- 10 -

misleading description of fact, or false or misleading representation of fact, which –

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

* * *

shall be liable in a civil action by any person that he or she is or is likely to be damaged by such act.

* * *

15 U.S.C. § 1125(a)(1)(A); *see* Complaint ¶¶ 30-36.

Count two alleges trademark infringement under section 21(a) of the Lanham Act, 15 U.S.C. § 1114, which provides in relevant part:

> (1) Any person who shall, without the consent of the registrant –

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or

- 11 -

> in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114; *see* Complaint ¶¶ 37-50.

Count three alleges unfair competition and passing off under Texas common law.  Complaint ¶¶ 51-53.  In Texas, "[u]nfair competition is a common law tort that occurs when one business entity 'palms off' its products as those of another.  The determinative question is whether the tortfeasor's practices are likely to mislead customers into believing that the product emanates from or has been endorsed by the claimant . . . . [T]he test is likelihood of confusion." *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 725-26 (Tex. App. – Dallas 2015, no pet.) (quoting *Kentucky Fried Chicken Corporation v. Diversified Packaging Corporation*, 549 F.2d 368, 382 (5th Cir. 1977) (internal citations omitted)).  Count four alleges trademark infringement under Texas common law.  Complaint  ¶¶ 54-56.  A common law trademark infringement claim under Texas law presents essentially no difference in issues than those under federal trademark infringement claims. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (citing *Horseshoe Bay Resort Sales Company v. Lake Lyndon B. Johnson Improvement Corporation*, 53 S.W.3d 799, 806 n.3 (Tex. App. –

Austin 2001, pet. denied)).  Count five alleges unjust enrichment by SNC's

unauthorized use of a mark that is confusingly similar to RRK's mark.  Complaint

¶¶ 57-59.  On the premise that RRK has not adequately plead infringement of its

trademarks, SNC argues that RRK has failed to state a claim for its unjust enrichment

cause of action as well.  Motion at 2.

To recover on a claim of trademark infringement, a plaintiff must first show

"that the mark is legally protectable and must then establish infringement by showing

a likelihood of confusion."  *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d

321, 329 (5th Cir. 2008).  The Lanham Act provides a cause of action for

infringement where one "uses (1) any reproduction, counterfeit, copy[,] or colorable

imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in

connection with the sale, offering for sale, distribution[,] or advertising of any goods;

(5) where such use is likely to cause confusion, or to cause mistake or to deceive."  *Id*.

In the Fifth Circuit, courts consider several contextual factors to determine whether a

likelihood of confusion exists:  (1) the type of trademark asserted by the plaintiff; (2)

the similarity of the plaintiff's and defendant's marks; (3) the similarity of the

plaintiff's and defendant's products; (4) the similarity of the plaintiff's and

defendant's sales outlets and purchasers; (5) the similarity of the advertising media

used by the plaintiff and the defendant; (6) whether the defendant intended to cause

confusion; (7) any actual confusion; and (8) the degree of care exercised by potential

purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir.

2009); *Marathon Manufacturing Company v. Enerlite Products Corporation*, 767 F.2d 214,

217-18 (5th Cir. 1985).

"Liability for trademark infringement hinges on whether a likelihood of

confusion exists between the marks at issue." *Baker v. DeShong*, 90 F. Supp. 3d 659,

663 (N.D. Tex. 2014) (Cummings, J.) (citing *Society of Financial Examiners v. National

Association of Certified Fraud Examiners Inc.*, 41 F.3d 223, 227 (5th Cir. 1995)), *aff'd*

sub nom. *Office of Medical & Scientific Justice, Inc. v. DeShong*, 596 Fed. Appx. 328 (5th

Cir. 2015)). Likelihood of confusion is the critical inquiry for counts one through

five in this case. See *American Century Proprietary Holdings, Inc. v. American Century

Casualty Company*, 295 Fed. Appx. 630, 634 (5th Cir. 2008) ("Likelihood of

confusion is the central evidentiary test for three of the four causes of action on which

Financial sought summary judgment: infringement under the Lanham Act, false

designation of origin under the Lanham Act, and unfair competition under Texas

common law.") (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658,

663 n.1 (5th Cir. 2000) (Lanham Act and Texas unfair competition); *Amstar

Corporation v. Domino's Pizza, Inc.*, 615 F.2d 252, 258-59 (5th Cir. 1980) (Lanham

Act infringement and false designation of origin)); *Amazing Spaces, Inc.*, 608 F.3d at

235 n.7 ("The analysis with respect to Amazing Spaces's claims under the Lanham

Act will be dispositive of its corresponding claims under Texas law as well. A

trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (citing *Horseshoe Bay Resort Sales Company*, 53 S.W.3d at 806 n.3 (Tex. App. – Austin 2001, pet. denied)).  Count five, which alleges unjust enrichment, also hinges on the likelihood-of-confusion inquiry because the claim is that SNC was unjustly enriched by their unauthorized use of a mark that is confusingly similar to RRK's mark.  Complaint ¶ 58.  SNC's arguments for dismissal of the unjust enrichment claim are derivative of its arguments concerning the trademark infringement claims:  the "[u]njust [e]nrichment claim is premised on Defendant's infringement of Plaintiff's trademark and necessarily fails if the trademark infringement claims fail."  *See* Motion at 2.  In sum, if RRK adequately plead a likelihood of confusion exists between the marks, then the motion must be denied as to counts one through five.

"Under the likelihood-of-confusion test, the plaintiff must prove that the defendant's use of its mark 'creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship' of the defendant's services." *American Century Proprietary Holdings, Inc.*, 295 Fed. Appx. at 634.  The likelihood-of-confusion test requires more than a mere possibility of confusion.  *Id*. Thus, RRK's complaint must contain factual allegations that, when assumed to be true, "raise a right to relief above the speculative level" with respect to likelihood of

confusion between the marks.  See *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

RRK alleges that SNC intentionally violated RRK's trademark rights by "falsely represent[ing] itself as affiliated, connected, and/or associated with Plaintiff and/or Plaintiff's products sold and offered for sale under Plaintiff's Registered Mark (TELUGU FOODS SOUTH INDIA SPECIALS (& Design)®)[]" and that SNC "sought to create the false impression that the products it offers are sponsored or approved by, and/or offered under a license from, Plaintiff.  The consuming public is likely to be confused, mistaken, or deceived into believing that Defendant's products are Plaintiff's products."  Complaint ¶ 33.

SNC's position is that these related counts must be dismissed because RRK has failed to adequately plead a likelihood of confusion between the two marks.  Motion at 3.  SNC argues that "[t]he contention of likelihood of confusion in the present Complaint is implausible because the only element of the defendant's package design common to the Plaintiff's asserted trademark is the word TELUGU which is a generic term, the use of which, separate from its mark as a whole, Plaintiff has disclaimed and in which it has no rights, as a matter of law."  *Id*.  Further, SNC contends that "[t]he Certificate of Registration at Exhibit A to the Complaint contains an express disclaimer reading 'No claim is made to the exclusive right to use the following apart from the mark as shown 'SOUTH INDIA,' 'TELUGU' and 'FOODS[]'" and that

- 16 -

"[t]he Trademark Office required the disclaimer of TELUGU because that term is commonly used in connection with food to indicate that it is food from the region of Andhra Pradesh and Telangana in South India." *Id*. at 3-4.

"As a general matter, whether infringement creates a likelihood of confusion is a question of fact that should not be addressed in a Rule 12(b)(6) motion, see *MCW, Inc. v. Badbusinessbureau.com, LLC*, 2004 WL 833595, at *15 (N.D. Tex. 2004) [(Fish, C.J.)], unless it is obvious from the face of the complaint that the plaintiff will not be able to make such a showing, *see, e.g., Toho Company, Limited v. Sears, Roebuck & Company*, 645 F.2d 788, 790-91 (9th Cir. 1981) (holding that dismissal was appropriate where the goods are unrelated as a matter of law)." *IVFMD Florida, Inc. v. IVFMD, P.A.*, No. 3:13-CV-3527-N, 2014 WL 11515574, at *6-7 (N.D. Tex. Mar. 7, 2014) (Godbey, J.) (consulting the factors relevant to likelihood of confusion only for the purpose of determining whether the plaintiff sufficiently alleged facts to survive a Rule 12(b)(6) motion to dismiss).

RRK has pled sufficient facts to show a likelihood of confusion at the Rule 12(b)(6) stage. First, the fact that RRK disclaimed the word "TELUGU" does not mean that the court should ignore that word in the likelihood-of-confusion analysis. "This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." *Shen Manufacturing Company v. Ritz Hotel Limited*, 393 F.3d 1238, 1243 (Fed. Cir. 2004); *In*

*re National Data Corporation*, 753 F.2d 1056, 1059 (Fed. Cir. 1985) ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion.  The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).  It is true that, "in articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re National Data Corporation*, 753 F.2d at 1058.  However, the court must ultimately consider the mark "in its entirety, including the disclaimed portion." *In re Viterra Inc.*, 671 F.3d 1358, 1367 (Fed. Cir. 2012) (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("[I]t is well settled that the disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.")).

As to the first factor considered in the likelihood-of-confusion analysis – the type of trademark asserted by the plaintiff – SNC argues that "TELUGU is a generic name for a regional Indian cuisine and therefore cannot act as a trademark distinguishing one food manufacture's products from another's."  Motion at 4.  In response, RRK contends that "[a]ny given term's correct classification as generic is a factual issue, so even 'summary judgment is rarely appropriate' on this ground."

Plaintiff's Response in Opposition to Motion to Dismiss ("Response") (docket entry 12) at 5-6 (quoting *Xtreme Lashes*, 576 F.3d at 232). RRK is correct that "[a]ny given term's correct classification is a factual issue." See *Soweco, Inc. v. Shell Oil Company*, 617 F.2d 1178, 1183 n. 12 (5th Cir. 1980). Whether a mark is generic depends on the resolution of several factual issues: (1) the court "must first identify the genus of goods or services at issue," (2) then determine who the relevant consuming public is, and (3) then assess whether the relevant consuming public perceives the mark, as a unitary whole, primarily to refer to that genus. *Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*, 786 F.3d 960, 966 (Fed. Cir. 2015); see also *Xtreme Lashes*, 576 F.3d at 232. These inquiries require the consideration of evidence that is not appropriate at the Rule 12(b)(6) stage. See *Terex Corporation v. Cubex Limited*, No. CIV.A.3:06-CV-1639-G, 2006 WL 3542706, at \*13 (N.D. Tex. Dec. 7, 2006) (Fish, J.) (recognizing that "the court is limited, on a motion to dismiss, to the allegations in the complaint").

SNC maintains that the two marks are entirely dissimilar such that there is no likelihood of confusion:

> In the case of Plaintiff's mark, the non-disclaimed components are (see description of the registered mark in Complaint Exhibit A), the white letters, the red oval background behind the words Telugu Foods, the gold and white accents and the gold brush design above the first U of Telugu and the word SPECIALS. When Defendant's mark is examined, the only one of these non-distinctive elements it includes is the use of white lettering. In

> addition, Plaintiff's mark has no equivalent to the words
> IN LOVE WITH and the Heart Design that are distinctive
> components of Defendant's mark.  Although TELUGU is
> common to both marks, the purchasers of the parties'
> goods will know that this describes the type of food, not its
> source of origin.  The similarities between the marks,
> therefore, are totally insufficient to make a plausible case of
> likelihood of confusion.

Motion at 7-8.

This argument only goes to the second factor – similarity of the plaintiff's and

defendant's marks.  See *Xtreme Lashes, LLC*, 576 F.3d at 227.  While it is true that

factor two may be determinative on its own, this is only the case when there is such a

great dissimilarity between the parties' marks that no confusion could possibly be

likely.  See *Oakville Hills Cellar, Inc. v. Georgallis Holdings, Inc*., 826 F.3d 1376,

1381-82 (Fed. Cir. 2016) (citation omitted).  That is not the case here.  Both parties'

marks have similar colors (red and white), font, and lettering with the word

"TELUGU" being a unique and distinctive focal point.  Both marks "conjure an

image" of food products from the Telugu region.  See *In re Detroit Athletic Company*,

903 F.3d 1297, 1303 (Fed. Cir. 2018) ("Both marks, moreover, conjure an image of

sporting goods or services having a connection to Detroit.  When viewed in their

entireties, the marks reveal an identical structure and a similar appearance, sound,

connotation, and commercial impression.").

Furthermore, as to the third factor – the similarity of the plaintiff's and

defendant's products – while the goods may not be identical, they substantially

overlap, both being South Asian snack and food products, which weighs in favor of finding a likelihood of confusion.  See *Xtreme Lashes, LLC*, 576 F.3d at 227; see also *Hewlett-Packard Company v. Packard Press, Inc.*, 281 F.3d 1261, 1266, 1268 (Fed. Cir. 2002) (finding confusion to be likely between HEWLETT PACKARD and PACKARD TECHNOLOGIES where "several of HP's registrations cover goods and services that are closely related to the broadly described services that Packard Press seeks to register under the PACKARD TECHNOLOGIES mark[]"); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464 (Fed. Cir. 1988) ("[A]pplicant's 'general merchandise store services' would include the sale of furniture . . . . What else it sells is irrelevant; there is overlap.").

Additionally, as to the fourth factor – the similarity of the plaintiff's and defendant's sales outlets and purchasers – the marks are also used in the same or similar product lines.  See *Xtreme Lashes, LLC*, 576 F.3d at 227.  RRK alleges that "[s]tores and customers that have been purchasing Plaintiff's products for years have now replaced Plaintiff's products with Defendant's own similar goods."  Complaint ¶ 27.  Further, going to factor six – whether the defendant intended to cause confusion – SNC began using its mark only after a years-long working relationship with RRK as its importer and distributor and was therefore familiar with RRK's mark prior to designing its own.  See *Xtreme Lashes, LLC*, 576 F.3d at 227.  RRK contends that SNC "had actual and constructive knowledge of Plaintiff's superior rights in and

to the TELUGU FOODS SOUTH INDIA SPECIALS (& Design)® trademark when Defendant began using the 'IN LOVE WITH TELUGU' mark as part of its bad-faith scheme to confuse and deceive consumers." Complaint ¶ 44. Moreover, as to the eighth factor – the degree of care exercised by potential purchasers – the Fifth Circuit has noted that "[w]here the items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Xtreme Lashes, LLC*, 576 F.3d at 227, 231. All of these considerations show that it is plausible that consumers would be likely to think that the parties' marks indicate a common source of origin.

Therefore, RRK pled sufficient facts to show the plausibility of a likelihood of confusion at the Rule 12(b)(6) stage. Accordingly, SNC's Rule 12(b)(6) motion is **DENIED** with respect to RRK's claims under Counts I, II, III, IV, and V.

### 2. *Misappropriation of Trade Secrets*
#### *(Counts VI, VII)*

Count six alleges misappropriation of trade secrets under the DTSA. Complaint ¶¶ 60-64. Count seven alleges misappropriation of trade secrets under the TUTSA. Complaint ¶¶ 65-69. Specifically, RRK contends that it "is the owner of proprietary trade secrets including but not limited to its secret and proprietary recipes, pricing information, customer lists, and confidential information unknown to Plaintiff's competitors concerning the South Asian food market[]" and that SNC "acquired knowledge of Plaintiff's trade secrets under circumstances giving rise to a

duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets." *Id*. ¶¶ 61-62; *see also id*. ¶ 12 ("As an importer and distributor, Defendant was entrusted with valuable, proprietary, trade secret information about Plaintiff's products . . . ."); ¶¶ 66-67.  RRK maintains that SNC has continued "to use Plaintiff's trade secrets without authorization."  *Id*. ¶ 63; *see also id*. ¶ 68.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1)); *see also* TEX. CIV. PRAC. & REM. CODE §§ 134A.003-.004 (TUTSA, providing for injunctive relief and damages for misappropriation of trade secrets).[1]  The DTSA defines "trade secret" and "misappropriation" as follows:[2]

> (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –

---

[1]     The TUTSA does not require proof of use in interstate commerce. *Philips North America LLC v. Image Technology Consulting LLC*, No. 3:22-CV-0147-B, 2022 WL 2972226, at *8 (N.D. Tex. July 26, 2022) (Boyle, J.).

[2]     The TUTSA's definitions of "trade secret" and "misappropriation" are substantially similar.  *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(3) (misappropriation), (6) (trade secret).

(A) *the owner thereof has taken reasonable measures to keep such information secret*; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

\* \* \*

(5) the term "misappropriation" means –

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who –

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a
person who owed a duty to the
person seeking relief to maintain
the secrecy of the trade secret or
limit the use of the trade secret;
or

(iii) before a material change of the position
of the person, knew or had reason to know
that –

(I) the trade secret was a trade
secret; and

(II) knowledge of the trade
secret had been acquired by
accident or mistake . . . .

18 U.S.C. § 1839(3),(5) (emphasis added).

"To state a claim under the DTSA, a plaintiff must allege:  (1) a trade secret;

(2) misappropriation; and (3) use in interstate commerce.  18 U.S.C. § 1836; *Blue*

*Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2

(W.D. Tex. Mar. 6, 2018).  Similarly, to establish trade secret misappropriation

under Texas law, a plaintiff must show:  (1) a trade secret; (2) Defendants acquired

the trade secret by breach of a confidential relationship or other improper means; and

(3) Defendants used the trade secret without authorization." *Marek Brother Systems,*

*Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162, at *3 (N.D. Tex. July 24,

2019) (Lindsay, J.) (citing *General Universal Systems, Inc. v. HAL, Inc.*, 500 F.3d 444,

449 (5th Cir. 2007) (citations omitted)); see also *Universal Plant Services, Inc. v.*

*Dresser-Rand Group, Inc.*, 571 S.W.3d 346, 360 (Tex. App. – Houston [1st Dist.]

2018) (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463

(Tex. App. – Austin 2004, pet. denied)).  Under both the DTSA and the TUTSA,

misappropriation includes (1) "disclosure or use of a trade secret of another without

express or implied consent by a person who . . . used improper means to acquire

knowledge of the trade secret" and (2) "acquisition of a trade secret of another by a

person who knows or has reason to know that the trade secret was acquired by

improper means."  TEX. CIV. PRAC. & REM. CODE  § 134A.002(3); 18 U.S.C.

§ 1839(5).  "Improper means" include the "breach or inducement of a breach of a

duty to maintain secrecy."  TEX. CIV. PRAC. & REM. CODE § 134A.002(2); 18 U.S.C.

§ 1839(6)(A).

Critically, the DTSA and the TUTSA both define a "trade secret" as

information that the owner "has taken reasonable measures to keep such information

secret . . . and the information derives independent economic value, actual or

potential, from not being generally known to, and not being readily ascertainable

through proper means by, another person who can obtain economic value from the

disclosure or use of the information."  18 U.S.C. § 1839(3);TEX. CIV. PRAC. & REM.

CODE § 134A.002(6).

SNC contends that "in order to sufficiently plead a trade secrets claim under

either act, Plaintiff is required to plead facts indicating it took reasonable measures to

maintain the secrecy of the information [, and] Plaintiff has failed to plead *any* facts that demonstrate that it took *any* measures to maintain secrecy, whether reasonable or not reasonable."  Defendant's Reply Brief in Support of Its Motion Under Rule 12(B)(6) to Dismiss the Complaint ("Reply") (docket entry 13) at 7-8 (emphasis in the original) (internal citations omitted); *see* 18 U.S.C. § 1839(3)(A).  RRK asserts that it "plead that its trade secrets were 'unknown to its competitors' which would have been impossible had plaintiff not taken reasonable safeguards to protect their privacy."  Response at 13-14.  In support of its position that it took reasonable steps to safeguard its information, RRK cites *Sortiumusa LLC v. Hunger*, No. 3:11-CV-1656-M, 2013 WL 11730655 (N.D. Tex. Mar. 31, 2013) (Lynn, J.).  See Response at 13-14.  However, in *Sortiumusa*, the plaintiff alleged that the defendant had "signed a confidentiality agreement, and that it maintained its customer list on a single, password-protected computer, that it has implemented a policy prohibiting employees from printing or copying the customer list on removable media such as USB drives, and that its list is generally unknown to competitors."  *Id*. at *12; see also *Academy of Allergy* & *Asthma in Primary Care v. Quest Diagnostics, Inc.*, No. 5:17-CV-1295-RCL, 2022 WL 980791, at *10 (W.D. Tex. Mar. 31, 2022).  By contrast to the plaintiff in *Sortimusa*, RRK has failed to allege that it took reasonable measures to keep information secret.  See *Richter v. Carnival Corporation*, No. 3:18-CV-2172-N, 2019 WL 5894213, at *7 (N.D. Tex. Nov. 12, 2019) (Godbey, J.);

see also *DBG Group Investments, LLC v. Puradigm, LLC*, No. 3:21-CV-678-S, 2022 WL

313435, at *3 (N.D. Tex. Feb. 2, 2022) (Scholer, J.) (noting that plaintiff "detail[ed]

the specific policies and measures employed by Plaintiff to protect the trade secret's

confidentiality").

Accordingly, SNC's Rule 12(b)(6) motion is **GRANTED** with respect to

RRK's claims under Counts VI and VII.  However, RRK is **GRANTED** the right to

replead these claims, provided such amended pleading is filed and served by

**September 6, 2022.**

### III.  <u>CONCLUSION</u>

For the reasons stated above, SNC's Rule 12(b)(6) motion is **DENIED** with

respect to the claims under Counts I, II, III, IV, and V, but is **GRANTED** with

respect to the claims under Counts VI and VII.  Finally, RRK is **GRANTED** the right

to replead the claims under Counts VI and VII, provided such amended pleading is

filed and served by **September 6, 2022.**

**SO ORDERED**.

August 23, 2022.

_____

A. JOE FISH
Senior United States District Judge